979 So.2d 896 (2008)
STATE of Florida, Petitioner,
v.
Rodolfo CONTRERAS, Respondent.
No. SC05-1767.
Supreme Court of Florida.
March 13, 2008.
*898 Bill McCollum, Attorney General, Tallahassee, FL, Celia Terenzio and Melanie Dale Surber, Assistant Attorneys General, West Palm Beach, FL, for Petitioner.
Valentin Rodriguez, Jr. of the Law Offices of Valentin Rodriguez, P.A., West Palm Beach, FL, for Respondent.
QUINCE, J.
This case is before the Court for review of the decision of the Fourth District Court of Appeal in Contreras v. State, 910 So.2d 901 (Fla. 4th DCA 2005). The district court certified that its decision is in direct conflict with the Fifth District Court of Appeal's decision in Blanton v. State, 880 So.2d 798 (Fla. 5th DCA 2004), approved, 978 So.2d 149 (Fla. 2008), on the issue of whether a discovery deposition can satisfy the Crawford requirement of a prior opportunity for cross-examination of a witness. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons expressed in this opinion, we approve in part and quash in part the decision of the Fourth District in this case.

FACTS AND PROCEDURAL HISTORY
Rodolfo Contreras was convicted of sexual battery and lewd and lascivious molestation of his daughter when she was nine years old. The coordinator of a Child Protection Team (CPT) took the daughter's statement at a local domestic violence victims' shelter. The statement was videotaped and a police detective in a different room was electronically connected to the interviewer and was able to suggest questions to the interviewer. The daughter stated that Contreras had committed sexual acts on her on one particular night. She stated that Contreras had touched her, kissed her all over, touched her "pee pee" with his private part, and that it "hurted." Contreras was charged with capital sexual *899 battery on his daughter based on this videotaped statement.
Six months later, the defense counsel assigned to Contreras's case took a discovery deposition from the daughter. Contreras was not present during the deposition. In substance, the deposition was not different from the daughter's earlier videotaped statement. Ten months after the first deposition, Contreras's new defense counsel was granted permission to take another discovery deposition because prior defense counsel had destroyed his discovery notes. The judge watched the second deposition from another room via closed circuit television in order to rule on any objections raised during the questioning.
In this second deposition, the daughter stated that she expected to be questioned again before trial and at the trial and that she did not expect to be nervous at trial because defense counsel would probably ask her the same questions. The daughter also revealed new information. She had asked to see her videotaped statement before giving the second deposition because she "didn't have such a good memory" of the incident and was having problems remembering what had happened. She had watched the videotape before she gave her second deposition in order to say the same things during the deposition if she had trouble remembering the facts. During the initial videotaped statement, she had tried to tell the CPT interviewer what she thought the interviewer wanted to hear. She did not have a good understanding of her anatomy or how to describe the incident at the time she gave the videotaped statement, but had since learned the difference between a "vagina" and a "pee pee." She did not know what "penetrate" meant, but her father did not "stick himself inside her." She remembered talking to someone in a previous interview and not wanting to tell the truth because her mother was present. She has related the incident to a lot of different people, including law enforcement officers, therapists, and attorneys. She knows the incident was not her fault and that it happens to a lot of young girls.
The case did not go to trial until the daughter was thirteen years old. The State initially moved to have the daughter testify via closed circuit television. However, a few days later the State amended its request, asked that the daughter be declared unavailable for trial, and requested to use her initial videotaped statement to the CPT interviewer instead. A psychologist opined that the daughter would suffer emotional and psychological harm if required to testify in person. The trial court found the daughter to be unavailable based on the expert's opinion and admitted the videotaped statement.
At trial, the State's evidence consisted of this videotaped statement; the father's confession to molestation and perhaps union with the child's genitals, but not penetration; and the mother's testimony that she saw Contreras and the daughter in differing stages of undress afterward. The CPT interviewer corroborated the substance of the videotaped statement. A doctor found no physical evidence of molestation.
At the close of the State's case, Contreras moved for a judgment of acquittal based on the State's failure to prove a prima facie case. Contreras argued that the only evidence of the element of penetration was the daughter's videotaped statement, during which he had not been able to cross-examine her. The trial judge denied the motion, ruling that, while confrontational cross-examination is preferable, the daughter's videotaped statement was corroborated by other evidence. When defense counsel renewed his motion at the close of all evidence, the trial judge ruled that Contreras *900 was not denied his right of confrontation because he was given the opportunity to depose the victim at the deposition that was not offered into evidence at trial. The judge also reiterated that the State's case contained a "tremendous amount of credible and consistent evidence" and that the State's witnesses corroborated each other. Contreras was convicted and appealed to the Fourth District Court of Appeal.
On appeal, the Fourth District addressed Contreras's claim that his Sixth Amendment Confrontation Clause rights were violated by the State's introduction of the victim's videotaped pretrial statement as the primary evidence of guilt. Contreras v. State, 910 So.2d 901 (Fla. 4th DCA 2005). The Fourth District concluded that the victim's statements to the CPT interviewer were testimonial under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), because of the statutes dealing with Child Protection Teams. Contreras, 910 So.2d at 905.[1] The Fourth District noted that other states with functional equivalents of Florida's CPTs have held similar statements to be testimonial. Id. at 906.
The Fourth District also concluded that even if the use of the CPT videotaped statement complied with the Confrontation Clause under this Court's previous decisions in State v. Townsend, 635 So.2d 949 (Fla.1994), and Perez v. State, 536 So.2d 206 (Fla.1988), it did not satisfy the requirements of Crawford. The Fourth District noted that Townsend and Perez were based on Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which is no longer applicable to Confrontation Clause challenges in the wake of Crawford. The Fourth District also held that the trial court's finding that the child victim was unavailable to testify under section 90.803(23), Florida Statutes (2002), did not satisfy the Confrontation Clause requirement of physical unavailability as provided in Crawford. The Fourth District concluded that unavailability for Confrontation Clause purposes requires something more than subjective mental anguish and emotional scarring from testimony. The Fourth District certified conflict with Townsend and Perez on this issue.[2]Contreras, 910 So.2d at 906-08.
The Fourth District also certified conflict with the Fifth District's decision in Blanton v. State, 880 So.2d 798 (Fla. 5th DCA 2004), on the issue of whether a discovery deposition can satisfy the Crawford requirement of a prior opportunity for cross-examination of a witness. The Fourth District stated that had the discovery deposition of the child victim been admitted into evidence along with the CPT statement, it might have satisfied the right to confrontation. However, the Fourth *901 District noted, it was the State's decision to only present the ex-parte CPT statement and the defendant had no responsibility to "clean up" the State's evidence against him in his criminal trial. Contreras, 910 So.2d at 908 n. 1. Further, the Fourth District noted, Contreras was not present at either of the depositions of the victim. The Fourth District ruled that where a statement is testimonial under Crawford, the prior opportunity for cross-examination under the Sixth Amendment requires face-to-face confrontation of a defendant and the witness against him. Thus, the Fourth District concluded, the "opportunity for cross-examination" at the later depositions did not save the State's reliance on the CPT statement. Contreras, 910 So.2d at 908-09.
However, the Fourth District distinguished its holding from that of the First District Court of Appeal in Lopez v. State, 888 So.2d 693 (Fla.1st DCA 2004), approved, 974 So.2d 340 (Fla.2008), which held that a criminal discovery deposition could never satisfy Crawford's prior cross-examination requirement. The Fourth District stated that it could "envision circumstances where [a] defendant is aware of the State's intention to use a prior testimonial statement, is present at a deposition, and so conducts the cross examination of the witness that it might satisfy Crawford." Contreras, 910 So.2d at 909. Finally, the Fourth District concluded that the Crawford violation was not harmless error, as the erroneously admitted statement was the "single most persuasive evidence of [Contreras's] guilt." Id. at 910 (quoting People v. Vigil, 104 P.3d 258, 265 (Colo.Ct.App.2004), aff'd in part and rev'd in part, 127 P.3d 916 (Colo.2006)).
The State sought review of the Fourth District's decision by this Court on the basis of the certified conflict. The Court heard argument from the parties on the same day that it considered two other cases involving Confrontation Clause issues under Crawford. See Blanton v. State, 978 So.2d 149 (Fla. 2008); State v. Lopez, 974 So.2d 340 (Fla.2008).

ANALYSIS
The State contends that Contreras's right to confrontation was not violated by the admission of the child's videotaped statement. In support of its position, the State asserts that the child's videotaped statement was not testimonial and thus not subject to Crawford. However, if the statement was testimonial, the State contends that the Crawford requirements were met because the child victim was "unavailable" to testify based on the emotional or mental harm that she might suffer from testifying and because Contreras was afforded opportunities to cross-examine the child during the discovery depositions. Finally, the State argues that even if the trial court erred in admitting the videotaped statement at trial, the error was harmless.
Section 90.802, Florida Statutes (2007), of the Florida Evidence Code states the general rule that hearsay is inadmissible except as provided by statute. Hearsay is defined in section 90.801(1)(c) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." § 90.801(1)(c), Fla. Stat. (2007). The videotaped statements by the child victim were hearsay because they were offered as proof that Contreras committed the acts in question. Thus, these statements were not admissible in evidence unless they fell within one of the statutory exceptions to the hearsay rule. The trial court found the statements admissible under the child victim hearsay *902 exception in section 90.803(23), Florida Statutes (2007).[3]
However, admissibility under this hearsay exception does not necessarily mean that the statements were properly admitted in evidence. An out-of-court statement is not admissible merely because it meets the statutory definition of child victim hearsay. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The right guaranteed by this part of the Sixth Amendment differs from the kind of protection that is afforded by state evidence rules governing the admission of hearsay.
The standard for determining whether the admission of a testimonial hearsay statement against a criminal defendant violates the right of confrontation was recently modified by the Supreme Court in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Before Crawford, the issue was controlled by Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which held that a hearsay statement could be admitted in a criminal trial without violating the right of confrontation if it was shown that the declarant was unavailable and the out-of-court statement bore adequate indicia of reliability. The Roberts test focused on the reliability of the statement. As explained in Roberts, a statement had adequate indicia of reliability if it either fell within a firmly rooted hearsay exception or if it bore "particularized guarantees of trustworthiness." Id.
In Crawford, the Supreme Court dispensed with the Roberts reliability analysis for testimonial hearsay statements and held the admission of a hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment if (1) the statement is testimonial, (2) the declarant is unavailable, and (3) the defendant lacked a prior opportunity for cross-examination of the declarant. The Court emphasized that if "testimonial" evidence is at issue, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Crawford, 541 U.S. at 68, 124 S.Ct. 1354. "Only [testimonial statements] cause the declarant to be a *903 `witness' within the meaning of the Confrontation Clause." Davis v. Washington, 547 U.S. 813, 126 S.Ct. 2266, 2273, 165 L.Ed.2d 224 (2006). "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." Id. Thus, we must initially determine whether the statements at issue here are testimonial.

1. Testimonial Statement
While Crawford did not establish a precise definition of the term "testimonial," the Supreme Court did provide some guidance, holding that, at a minimum, statements are testimonial if the declarant made them at a "preliminary hearing, before a grand jury, or at a former trial; and [in] police interrogations." Crawford, 541 U.S. at 68, 124 S.Ct. 1354. Following Crawford, the Supreme Court has provided further guidance in determining when statements made in the course of police interrogations are testimonial. As the Supreme Court explained in Davis v. Washington, the distinction rests on the primary purpose of the interrogation. 126 S.Ct. at 2273-74. "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." Id. at 2273. In contrast, such out-of-court statements are testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Id. at 2273-74. Davis left open the question of "whether and when statements made to someone other than law enforcement personnel are `testimonial.'" Id. at 2274 n. 2. However, the Supreme Court did conclude that even where 911 operators are not law enforcement officers "they may at least be agents of law enforcement when they conduct interrogations of 911 callers." Id.
Other courts have concluded that a child's spontaneous statement to a friend or family member is not likely to be testimonial. See, e.g., People v. Vigil, 127 P.3d 916, 927-28 (Colo.2006) (holding that an excited utterance a child made to his father and his father's friend immediately after a sexual assault was not testimonial); Mencos v. State, 909 So.2d 349, 351 (Fla. 4th DCA 2005) (concluding that child victim's statements to her mother that were overheard by a police detective were not testimonial and thus did not violate the Confrontation Clause); Herrera-Vega v. State, 888 So.2d 66 (Fla. 5th DCA 2004) (finding that statements made by child victim to her mother and father about sexual contacts with the defendant were not testimonial); Somervell v. State, 883 So.2d 836 (Fla. 5th DCA 2004) (holding that statements mother overheard her autistic child make were not testimonial); Purvis v. State, 829 N.E.2d 572, 579 (Ind.Ct.App. 2005) (holding that a ten-year-old victim's statements made in response to his mother's boyfriend's questions posed immediately after the sexual abuse occurred were nontestimonial; noting that the statements were elicited to find out what had occurred and whether the child had been harmed), cert. denied, 547 U.S. 1026, 126 S.Ct. 1580, 164 L.Ed.2d 310 (2006); see also Crawford, 541 U.S. at 51, 124 S.Ct. 1354 ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."); United States v. Manfre, 368 F.3d 832, 838 n. 1 (8th Cir.2004) (noting comments made to "loved ones or acquaintances . . . are not the kind of memorialized, judicial-process-created *904 evidence of which Crawford speaks"). Such spontaneous statements to someone other than law enforcement personnel are not "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Crawford, 541 U.S. at 52, 124 S.Ct. 1354.
Courts have also concluded that a child victim's statements to a medical professional are not testimonial when the statements regard the nature of the alleged attack or the cause of the child's symptoms and pain. See, e.g., Vigil, 127 P.3d at 921-924 (concluding that child victim's responses to questions by examining physician were not testimonial statements because questioning was intended to gather information in order to reach a medical diagnosis; statements identifying the defendant as the perpetrator were not admitted because immaterial to doctor's opinion); State v. Saunders, 132 Wash.App. 592, 132 P.3d 743, 749 (2006) (finding no Sixth Amendment violation in admitting statements victim made to paramedic and emergency room physician during course of receiving medical care because purpose of giving statements was "to obtain appropriate care"), review denied, 159 Wash.2d 1017, 157 P.3d 403 (2007). In each of the cited cases the statements were not made to a person in authority for the purpose of accusing someone, or in the words of the Supreme Court, to "bear testimony" against someone. But see State v. Vaught, 268 Neb. 316, 682 N.W.2d 284, 291 (2004) (concluding that child victim's statement to emergency room physician identifying the defendant as the perpetrator of abuse was not testimonial because made for the purpose of medical treatment or diagnosis).
In contrast, courts have ruled that statements by child victims to police officers or members of child protection teams are testimonial in nature. See, e.g., People v. Sisavath, 118 Cal.App.4th 1396, 13 Cal. Rptr.3d 753, 757-58 (2004) (holding that statements by child victim to responding officer and to trained forensic interviewer at special center for suspected child abuse victims were testimonial in nature); State v. Snowden, 385 Md. 64, 867 A.2d 314, 326 (2005) (finding that statements by child victims to social worker employed by Child Protective Services were testimonial because children were interviewed for express purpose of developing testimony in child sexual abuse case); State v. Justus, 205 S.W.3d 872, 880 (Mo.2006) (holding that statements by a child molestation victim to sex abuse counselors were testimonial because the counselors, although not government employees, were government agents, and "the circumstances indicate that [the interviews'] primary purpose was to establish or prove past events potentially relevant to later criminal prosecution"); Flores v. State, 121 Nev. 706, 120 P.3d 1170, 1179 (2005) (concluding that child witness's statements to child abuse investigator and protective services investigator were testimonial because both of these individuals were "either police operatives" or "tasked with reporting instances of child abuse for prosecution"); State v. Mack, 337 Or. 586, 101 P.3d 349, 352 (2004) (finding that the Confrontation Clause prohibited a human services caseworker from testifying to statements made to her by a three-year-old witness during a police-directed interview, where the caseworker "was serving as a proxy for the police" during these interviews).
As the Supreme Court explained in Crawford, "[t]he involvement of government officers in the production of testimonial evidence presents the same risk, whether the officers are police or" other government officers serving an investigative and prosecutorial function. Crawford, 541 U.S. at 53, 124 S.Ct. 1354. The interviews of complainants of sexual abuse by *905 members of child protection units and similar personnel are "motivated in large part by the search for evidence" and "the personnel of these units have been treated as members of the extended prosecutorial team." John F. Yetter, Wrestling with Crawford v. Washington and the New Constitutional Law of Confrontation, Fla. B.J., Oct. 2004, at 26, 29; see also § 39.303(1)(e), Fla. Stat. (2005) (providing that one of the purposes of the Child Protection Teams is to provide "[e]xpert medical, psychological, and related professional testimony in court cases"); id. § 39.303(1)(j) (stating that CPT assessments shall include "forensic interviews"); id. § 39.306 (requiring CPTs to enter into agreements with local law enforcement agencies to investigate and prosecute child sexual abuse cases).
As explained by the Fourth District, the facts of the instant case show that the coordinator of the Child Protection Team, while working with the county sheriff, took a statement from the victim regarding the allegations of sexual molestation. Contreras, 910 So.2d at 902. The interview was conducted and videotaped at a local shelter for victims of domestic violence. While the law enforcement officer was not in the room during the interview, he was connected electronically to the CPT coordinator in order to suggest questions. Id. at 902-03. In light of the police presence and the electronic connection, we conclude that the CPT coordinator was serving as a police proxy in this interview. This is reinforced by the statutory connection of the CPT to such investigations and prosecutions. Thus, we agree with the Fourth District that "[t]his kind of interview by a CPT is indistinguishable from an ordinary police interrogation." Id. at 905. Moreover, the primary, if not the sole, purpose of the CPT interview was to investigate whether the crime of child sexual abuse had occurred, and to establish facts potentially relevant to a later criminal prosecution.
Based on the above, we agree with the Fourth District's conclusion that the child victim's statements to the CPT interviewer were testimonial. Thus, the statements had to meet the two requirements of Crawford in order not to violate the defendant's constitutional right to confrontation.

2. Unavailability of Declarant
Where the State seeks to admit testimonial hearsay evidence, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). However, Crawford does not elaborate on what constitutes "unavailability" for purposes of satisfying this constitutional standard. Contreras asserts that the Fourth District correctly concluded that "[g]eneralized `harm' from testifying does not make a witness unavailable within the meaning of the Sixth Amendment." Contreras, 910 So.2d at 907. The Fourth District reasoned that "[i]f witnesses are unavailable for Confrontation Clause purposes merely because of subjective mental anguish and emotional scarring from testimony, this protection would cease to have the certainty and categorical effect that Crawford holds it was designed to have." Id. The State counters that Crawford simply receded from the Roberts reliability/trustworthiness standard and in no way changed the unavailability standard.
Commentators who have discussed the impact of Crawford have expressed some questions regarding the parameters of "unavailability" for child victims. For example, in a recent article in The Florida Bar Journal, a criminal trial attorney concluded that the question of when a witness is unavailable in the context of Crawford is one of the issues that will have to be *906 clarified in the coming years. See William D. Matthewman, Crawford's Impact on Florida Criminal Law, Fla. B.J., Apr. 2006, at 10, 16. In another Florida Bar Journal article that was published shortly after the Crawford decision was released, a criminal law professor questioned the continued viability of Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), which approved testimony by a child victim via closed circuit television after a specific finding that the child would suffer emotional trauma if forced to testify in the presence of the defendant. See Yetter, supra, at 30. Justice Scalia, who wrote the majority in Crawford, authored a dissenting opinion in Craig stating "the position that is now the linchpin of the majority decision in Crawford," namely that the Confrontation Clause's guarantee of "face-to-face" confrontation "means, always and everywhere" that the defendant has the right to meet face to face those who give evidence against him. Yetter, supra, at 30 (quoting Craig, 497 U.S. at 862, 110 S.Ct. 3157 (Scalia, J., dissenting)). Another post-Crawford article also questions how Craig and Crawford will intersect in child victim cases. See Myrna S. Raeder, Domestic Violence, Child Abuse, and Trustworthiness Exceptions After Crawford, Crim. Just., Summer 2005, at 24.
While these legal commentaries present educated analysis and discussion, we have no definitive statement from the Supreme Court as to the precise meaning of unavailability for purposes of a Crawford analysis. However, we note that the declarant in Crawford was not physically unavailable to testify, but was instead excluded based on a marital privilege exemption. See Crawford, 541 U.S. at 40, 124 S.Ct. 1354.
Florida's statutory law and the decisions from other courts offer some guidance on this issue. Section 90.804(1)(d), Florida Statutes (2007), defines unavailability as including a declarant who is unable to be present or testify at the trial because of a "then-existing physical or mental illness or infirmity."[4] This is consistent with the requirement in section 90.803(23) that the court must find that the child's participation in the trial or proceeding "would result in a substantial likelihood of severe emotion or mental harm." Thus, Florida statutes provide that a witness's unavailability can be premised on a mental or emotional infirmity or harm, as well as physical absence.
Other courts that have considered Crawford challenges to the admission of testimonial hearsay statements by a child witness have concluded that a child's tender years and emotional trauma can render him or her "unavailable" as provided in Crawford. See, e.g., People v. Sisavath, 118 Cal.App.4th 1396, 13 Cal.Rptr.3d 753, 756 (2004) (finding four-year-old victim was "unavailable" based on her inability to express herself so as to be understood and her inability to understand the duty to tell the truth); Herrera-Vega v. State, 888 So.2d 66, 67 & n. 1 (Fla. 5th DCA 2004) (ruling that three-year-old victim was "unavailable" based on her refusal to repeat the statements she had made to her parents about the incident, her age, a potential learning disability, and certain language disabilities). We agree with these courts that a child witness can be "unavailable" *907 under Crawford due to mental or emotional harm that testifying can cause.
In the instant case, the Fourth District also concluded that even if mental or emotional harm would satisfy the unavailability requirement of Crawford, the record here does not support unavailability on that basis. Contreras, 910 So.2d at 907. The Fourth District noted that the child's testimony at the second discovery deposition demonstrated her understanding that she would have to testify at trial and her readiness to do so. Id. Thus, the Fourth District concluded, the child was not "unavailable" as a witness under section 90.803(23), which requires "a finding by the court that the child's participation in the trial or proceeding would result in a substantial likelihood of severe emotional or mental harm." § 90.803(23)(a)(2)(b), Fla. Stat. (2007).
A trial judge's finding regarding the likelihood of severe emotional or mental harm to the child due to participating in a trial or proceeding will be upheld on appeal, absent a showing of an abuse of discretion. Perez v. State, 536 So.2d 206, 210 (Fla.1988). In the instant case, psychologist Dr. George Rahaim, who is an expert on the psychological harm caused by sexual abuse on minors, evaluated the child and opined that she would suffer severe "emotional and psychological harm" if required to testify in person. Dr. Rahaim submitted his report in July 2002 after reviewing the child's February 1999 videotaped interview with the CPT worker; interviewing the child's mother, the guardian ad litem, and the state attorney involved with the case; conducting a clinical interview and psychological tests with the child; and reviewing letters and notes written by the child to her defendant father. Specifically, Dr. Rahaim reported that the child "suffers from serious and painful psychological distress and turmoil," is depressed and subject to "debilitating anxiety and very damaged self-esteem," has very unstable emotions, and blames herself for her father's incarceration. Dr. Rahaim also reported that the child expressed fears of participating in the trial and that both her mother and the guardian ad litem expressed concerns for her psychological well-being if she were required to testify in her father's presence. Dr. Rahaim also reported that the child has fantasies about the deaths of people close to her, including her father and herself, when she is reminded of the case. Based on this expert opinion, the trial court found that there was a substantial likelihood that the child would suffer severe emotional or mental harm if required to participate in the case and thus found her unavailable within the meaning of section 90.803(23).
The Fourth District faulted the psychologist for not considering the child's own testimony at the second deposition in May 2000 regarding her ability to testify at trial. At that second deposition, which was nearly two years after the abuse incident and almost sixteen months after the child's statement was videotaped, the child stated that she expected to be required to testify at trial and that she now understood that she was not at fault for what happened. While the psychologist did not mention the May 2000 deposition testimony in his report, he certainly relied on a wide range of information in forming his opinion that the child would be harmed if required to testify. The trial court's order on this matter states in detail the harm cited by Dr. Rahaim. Furthermore, the order cites the May 2000 deposition to show that even with the passage of time, the child reiterated the same facts that she had stated in her initial February 1999 videotaped statement. In light of the wide range of evidence presented and considered, we conclude that the trial judge did not abuse his discretion in finding the child *908 unavailable due to the substantial likelihood of harm. The Fourth District erred in this regard.
Finally, the Fourth District also concluded that the child victim, who was thirteen years old at the time of trial, no longer qualified for unavailability under section 90.803(23). The statute provides, in pertinent part, that "an out-of-court statement made by a child victim with a physical, mental, emotional, or developmental age of 11 or less describing any act of child abuse or neglect, any act of sexual abuse against the child, [etc.] . . . is admissible in evidence in any civil or criminal proceeding if" the child is found unavailable as a witness. Nothing in the statute provides that a finding of unavailability is limited by the victim's current age. The only age requirement is that the statement being admitted as hearsay must have been made by a victim eleven years or less in age. The victim in the instant case was eleven when she made the statements in question. Thus, we conclude that the statute was applicable to her and the Fourth District erred in this regard.
Based on the above, we conclude that the second Crawford requirement of unavailability was met in this case.

3. Prior Opportunity for Cross-Examination
Crawford also requires a prior opportunity for the defendant to cross-examine the declarant about the testimonial statement sought to be admitted. The State argues that this requirement was satisfied here because Contreras was afforded two opportunities to cross-examine the child during discovery depositions. The State also asserts that the State had no control over Contreras's decision not to admit the second videotaped deposition.
In examining the history of the Sixth Amendment's Confrontation Clause in Crawford, the Supreme Court explained that it was based on the English common law tradition of "live testimony in court subject to adversarial testing." Crawford, 541 U.S. at 43, 124 S.Ct. 1354. This common law tradition was in contrast to the civil law that "condone[d] examination in private by judicial officers." Id. The Supreme Court further explained that the originally proposed federal Constitution did not contain a right of confrontation, although many of the states' declarations of rights did. Id. at 48, 124 S.Ct. 1354. In response to general criticism of this omission, the First Congress included the Confrontation Clause in the proposal that became the Sixth Amendment. Id. at 48-49, 124 S.Ct. 1354. Early state decisions involving this right held that depositions or other prior testimony could only be admitted against an accused if he was present and had an opportunity to cross-examine the witness when the testimony was given. Id. at 49, 124 S.Ct. 1354. This "prior opportunity to cross-examine" is both a "necessary" and "dispositive" requirement to the admission of testimonial statements. Id. at 55, 124 S.Ct. 1354. Notably, "under no circumstances" shall the defendant be deprived of "seeing the witness face to face . . . and subjecting him to the ordeal of a cross-examination." Id. at 57, 124 S.Ct. 1354 (quoting Mattox v. United States, 156 U.S. 237, 244, 15 S.Ct. 337, 39 L.Ed. 409 (1895)). Because the Confrontation Clause provides a procedural, not a substantive, guarantee, "[i]t commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." Id. at 61, 124 S.Ct. 1354 (emphasis added).
In Davis v. Alaska, 415 U.S. 308, 316-17, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Supreme Court explained that the right of the accused to be confronted with the witnesses against him is more than being allowed to confront the witnesses *909 physically; its primary interest is the right of cross-examination. As the Supreme Court made clear:
Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness. . . . [T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.
Id. Thus, it stands to reason that the prior opportunity to cross-examine required by Crawford must serve the same functions.
In Ohio v. Roberts, the Supreme Court addressed the adequacy of the defendant's examination of a declarant at an adversary preliminary hearing. Ohio v. Roberts, 448 U.S. 56, 70, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).[5] From Roberts, we can discern that the requirement for confrontation is satisfied where the opportunity is exercised, is more than "de minimis," and is "the equivalent of significant cross-examination." Roberts, 448 U.S. at 70, 100 S.Ct. 2531; see also Yetter, supra, at 31. In light of Crawford, the Colorado Supreme Court recently held that its preliminary hearings, which are usually restricted to a determination of probable cause and limit the opportunity for cross-examination, "do[ ] not provide an adequate opportunity to cross-examine sufficient to satisfy the Confrontation Clause requirements." People v. Fry, 92 P.3d 970, 978 (Colo.2004).
Notwithstanding the State's arguments to the contrary here, we have no guidance from the Supreme Court as to whether the Crawford cross-examination requirement would be satisfied if the opportunity is not actually exercised or if defense counsel has no motive to conduct a trial-like cross-examination. However, based on previous case law, we conclude that the same waiver requirements would be applicable to this constitutional right as to any other, i.e., waiver must be knowing, voluntary, and intelligent. As the Supreme Court stated in Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968):
The State argues that petitioner waived his right to confront Woods at trial by not cross-examining him at the preliminary hearing. That contention is untenable. Not only was petitioner unaware that Woods would be in a federal prison at the time of his trial, but he was also unaware that, even assuming Woods' incarceration, the State would make no effort to produce Woods at trial. To suggest that failure to cross-examine in such circumstances constitutes a waiver of the right of confrontation at a subsequent trial hardly comports with this Court's definition of a waiver as "an intentional relinquishment or abandonment of a known right or privilege."
Id. at 725, 88 S.Ct. 1318 (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)); see also State v. Basiliere, 353 So.2d 820, 824 (Fla.1977) (concluding that defendant did not waive *910 his constitutional right of confrontation because, at the time of deposition, the defendant had no idea that the deponent would die and that the only opportunity to confront the deponent would be at the deposition).
The State contends that Florida's rules of criminal procedure provide an adequate opportunity for cross-examination through the chance to conduct a discovery deposition and to perpetuate the testimony of a witness through a deposition. Florida Rule of Criminal Procedure 3.220(h)(1)(A) provides that after the charging document has been filed the defendant may take the deposition of any witness listed by the prosecutor as a Category A witness under rule 3.220(b)(1)(A)(i).[6] However, rule 3.220(h)(7) provides that a defendant is not to be physically present at a deposition except by stipulation of the parties. The court can order the defendant's physical presence upon a showing of good cause. Fla. R.Crim. P. 3.220(h)(7). As explained in the committee notes, "[c]ases requiring the defendant's presence are the exception rather than the rule." Fla. R.Crim. P. 3.220 comm. note (1989). The Supreme Court Commission on Criminal Discovery also explained that it was a common complaint that "the presence of the defendant intimidates [rape and child abuse victims]" and this "trauma to the victim surpasses the benefit to the defense of having the defendant present at the deposition." Id. Because the commission found no right of a defendant to attend a deposition other than that granted by the rules of discovery, the commission stated its belief that "no such right should exist in those cases," i.e., rape and child abuse cases. Id. Thus, as represented by the Commission on Criminal Discovery and adopted by this Court in rule 3.220(h), discovery depositions, especially in sex crime cases, would not function as the equivalent of the cross-examination opportunity envisioned by Crawford. See also Yetter, supra, at 30 ("[I]f a discovery deposition is to have any chance of substitution for at-trial confrontation, the prosecution will at least have to stipulate to the attendance of the defendant, who, in turn, will have to be given the opportunity to attend.").
Additionally, the purpose of a discovery deposition is at odds with the concept of meaningful cross-examination. In State v. Green, 667 So.2d 756, 759 (Fla.1995), this Court explained the fundamental distinctions between depositions taken to perpetuate testimony pursuant to Florida Rule of Criminal Procedure 3.190(j) and discovery depositions under rule 3.220(h):
Depositions taken pursuant to rule 3.190 are specifically taken for the purpose of introducing those depositions at trial as substantive evidence. Depositions taken pursuant to rule 3.220, on the other hand, are for discovery purposes only and, for a number of reasons, assist in shortening the length of trials. How a lawyer prepares for and asks questions of a deposition witness whose testimony may be admissible at trial as substantive evidence under rule 3.190 is entirely different from how a lawyer prepares for and asks questions of a witness being deposed for discovery purposes under rule 3.220. In effect, the knowledge that a deposition witness's testimony can *911 be used substantively at trial may have a chilling effect on a lawyer's questioning of such a witness.
A defendant cannot be "expected to conduct an adequate cross-examination as to matters of which he first gained knowledge at the taking of the deposition." Basiliere, 353 So.2d at 824-25, especially if the defendant is "unaware that this deposition would be the only opportunity he would have to examine and challenge the accuracy of the deponent's statements." Id. at 824.
Finally, a deposition that is taken pursuant to rule 3.220 is only admissible for purposes of impeachment and not as substantive evidence. See Rodriguez v. State, 609 So.2d 493 (Fla.1992) (ruling that only depositions taken pursuant to rule 3.190(j) may be used as substantive evidence because rule 3.220 makes no provision for the use of discovery depositions as substantive evidence); State v. James, 402 So.2d 1169, 1171 (Fla.1981) ("[D]iscovery depositions may not be used as substantive evidence in a criminal trial."); Basiliere, 353 So.2d 820 at 823 (holding that deceased victim's discovery deposition was not admissible as evidence in defendant's trial because defendant was not present during the examination); cf. State v. Green, 667 So.2d 756, 759 (Fla.1995) (ruling that an inconsistent discovery deposition given by a victim who recants at trial is not admissible as substantive evidence under section 90.801(2)(a) which provides that an inconsistent statement given under oath in a deposition is not hearsay).
Thus, exercising the right to take a discovery deposition under rule 3.220 is not the functional substitute of in-court confrontation of the witness because the defendant is usually prohibited from being present, the motivation for the deposition does not result in the "equivalent of significant cross-examination," and the resulting deposition cannot be admitted as substantive evidence at trial. In fact, for a discovery deposition pursuant to rule 3.220(h) to meet the Crawford requirement of an opportunity for cross-examination, it would have to be the functional equivalent of a rule 3.190(j) deposition to perpetuate testimony.
For the above reasons, we conclude that defense counsel's discovery depositions of the child victim did not afford Contreras an opportunity for cross-examination as required by Crawford. Because the child's hearsay statement was testimonial and Contreras had no opportunity to cross-examine the declarant, the admission of the statement violated Contreras's Sixth Amendment right of confrontation.

4. Harmless Error Analysis
"It is well established that violations of the Confrontation Clause, if preserved for appellate review, are subject to harmless error review . . . and Crawford does not suggest otherwise." United States v. McClain, 377 F.3d 219, 222 (2d Cir.2004). Under Florida's harmless error analysis, the reviewing court must determine "whether there is a reasonable possibility that the error affected the verdict." State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986). The State, as the beneficiary of the error, has the burden to show that the error was harmless. Id. "If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful." Id.
In the instant case, the Fourth District deemed the child's statement to be "the single most persuasive evidence of [Contreras's] guilt" of committing sexual abuse. Contreras, 910 So.2d at 910 (quoting People v. Vigil, 104 P.3d at 265). And even though other evidence of guilt was presented, the court could not say that the erroneous admission of this statement *912 "was harmless beyond a reasonable doubt." Id.
In addition to the child's videotaped statement, the State presented other compelling evidence that Contreras sexually abused his daughter. A coworker testified that Contreras admitted that he molested his daughter and that he needed help. The child's mother testified that she discovered Contreras in bed with the child, observed Contreras's clothing around his ankles, and saw semen on the child's leg and bed. The mother also testified that the child was crying and told the mother what had happened. Contreras himself admitted that he had molested the child by rubbing his penis between her legs until he ejaculated, by touching her private parts with his hand, and by kissing her. However, Contreras did not admit to penetrating the child. In fact, the videotaped statement was the only evidence offered to support penetration.[7]
Thus, we agree with the Fourth District that the child's videotaped statement was the most persuasive evidence of penetration or union by Contreras, a necessary element of the sexual battery charge. See § 794.011(1)(h), Fla. Stat. (1997) ("Sexual battery means oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object. . . ."). In light of this statute, we conclude that the error in admitting the child's testimonial statements was not harmless as to Contreras's conviction for capital sexual battery.
In contrast, evidence of penetration or union was not required for Contreras's conviction of lewd and lascivious molestation. See § 800.04(1), Fla. Stat. (1997) (providing that a person who "[h]andles, fondles, or assaults any child under the age of 16 years in a lewd, lascivious, or indecent manner . . . without committing the crime of sexual battery, commits a felony of the second degree"). Thus, the error in admitting the child's testimonial statements was harmless beyond a reasonable doubt as to the lewd and lascivious molestation conviction. See DiGuilio, 491 So.2d at 1139.

CONCLUSION
Based on the reasons expressed above, we approve in part and quash in part the decision of the Fourth District Court of Appeal. We remand for proceedings consistent with this opinion.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Under various provisions of section 39.303(1), Florida Statutes (2007), child protection teams are charged with interviewing child victims of sexual abuse and with providing expert testimony in court. Further, section 39.01(13), Florida Statutes (2007), created CPTs for the express purpose of processing child abuse cases, and section 39.306, Florida Statutes (2007), requires CPTs to enter into agreements with local law enforcement agencies to be part of the local investigation and prosecution of child sexual abuse cases.
[2] While the district court certified conflict with Townsend and Perez on the issue of the admissibility of child hearsay statements, this Court does not have jurisdiction to review a district court decision that is certified to be in conflict with a decision of this Court. Jurisdiction based on certified conflict only extends to district court decisions certified "to be in direct conflict with a decision of another district court of appeal." Art. V, § 3(b)(4), Fla. Const. Thus, we do not review this case on the basis of certified conflict with our decisions in Townsend and Perez, but rather on the basis of the certified conflict with the Fifth District's decision in Blanton.
[3] The child victim hearsay exception provides, in pertinent part:

(a) Unless the source of information or the method or circumstances by which the statement is reported indicates a lack of trustworthiness, an out-of-court statement made by a child victim with a physical, mental, emotional, or developmental age of 11 or less describing any act of child abuse or neglect, any act of sexual abuse against a child, the offense of child abuse, the offense of aggravated child abuse, or any offense involving an unlawful sexual act, contact, intrusion, or penetration performed in the presence of, with, by, or on the declarant child, not otherwise admissible, is admissible in evidence in any civil or criminal proceeding if:
1. The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. In making its determination, the court may consider the mental and physical age and maturity of the child, the nature and duration of the abuse or offense, the relationship of the child to the offender, the reliability of the assertion, the reliability of the child victim, and any other factor deemed appropriate; and
2. The child either:
a. Testifies; or
b. Is unavailable as a witness, provided that there is other corroborative evidence of the abuse or offense. Unavailability shall include a finding by the court that the child's participation in the trial or proceeding would result in a substantial likelihood of severe emotional or mental harm, in addition to findings pursuant to s. 90.804(1).
§ 90.803(23), Fla. Stat. (2007).
[4] Section 90.804(1) provides five ways in which a declarant may be unavailable as a witness, including being exempt based on privilege, refusing to testify despite a court order to do so, suffering a lack of memory on the subject matter, unable to be present due to death or then-existing physical or mental illness or infirmity, and physical absence despite the proponent's efforts to secure his presence by process. Thus, physical absence is only one of the ways that a witness can be unavailable.
[5] Even though the Supreme Court receded from the Roberts reliability test in Crawford, the Court cited Roberts with approval for the proposition that prior trial or hearing testimony is admissible only if the defendant had an adequate opportunity to cross-examine. See Crawford, 541 U.S. at 58, 124 S.Ct. 1354. The Supreme Court noted that the testimony from a preliminary hearing was properly admitted in Roberts because the defendant had examined the witness at that hearing. Id.
[6] Florida Rule of Criminal Procedure 3.220(b)(1)(A)(i) lists seven types of witnesses that are included as Category A witnesses: eyewitnesses; alibi witnesses and rebuttal to alibi witnesses; witnesses present when a recorded or unrecorded statement was made by a defendant or codefendant; investigating officers; witnesses known by the prosecutor to have exculpatory material information; child hearsay witnesses; and expert witnesses who have not provided a written report and curriculum vitae or who are going to testify as to test results or give opinions subject to Frye v. United States, 293 F. 1013 (D.C.Cir.1923).
[7] As noted above, the child did not actually state that Contreras penetrated her. However, her videotaped statement that Contreras touched her "pee-pee" with his private part and that it "hurted" could have been interpreted by the jury as meaning this.