

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0644-10

**TOMMY CORONADO, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE SEVENTH COURT OF APPEALS
## DEAF SMITH COUNTY

COCHRAN, J., delivered the opinion of the Court in which PRICE, WOMACK, JOHNSON and ALCALA, JJ., joined. HERVEY, J., filed a concurring opinion in which KEASLER, J., joined. KELLER, P.J., filed a dissenting opinion. MEYERS, J., dissented.

### OPINION

We granted review of this case to determine whether the videotape procedures set out in Article 38.071, § 2,[1] including the use of written interrogatories in lieu of live testimony and cross-examination, satisfy the Sixth Amendment rights of confrontation and cross-

---

[1] TEX. CODE CRIM. PROC. art. 38.071, §2.

examination under the Supreme Court's *Crawford*[2] line of cases.[3] In this aggravated-sexual-assault-of-a-child prosecution, the court of appeals found "no error in the trial court's decision to allow cross-examination through written questions only" and to admit the child complainant's two videotaped interviews with a child-abuse forensic examiner instead of requiring live testimony.[4]

Although we agree that there must be balance between a defendant's right to confrontation and a societal need to protect fragile and traumatized child victims, that balance cannot constitutionally be struck by the method set out in Section 2 of Article 38.071. On federal constitutional matters, we are obliged to follow the dictates of the United States Supreme Court regardless of our own notions.[5] We therefore reverse the judgment of the court of appeals because it erroneously held that constitutionally adequate cross-examination can be done through the use of written interrogatories posed by a "neutral"

---

[2] *Crawford v. Washington*, 541 U.S. 36 (2004); *Davis v. Washington*, 547 U.S. 813 (2006); *Giles v. California*, 554 U.S. 353 (2008); *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527 (2009); *Michigan v. Bryant*, 131 S.Ct. 1143 (2011); *Bullcoming v. New Mexico*, 131 S.Ct. 2705 (2011).

[3] Appellant's sole ground for review states,
Does a videotaped interview of the complainant by a neutral questioner, with a list of questions submitted by the defendant over objection, satisfy the Sixth Amendment right to cross-examination in the form of "*rigorous* testing in the context of an *adversary* proceeding?"

[4] *Coronado v. State*, 310 S.W.3d 156, 165 (Tex. App.—Amarillo 2010).

[5] *Casarez v. State*, 913 S.W.2d 468, 475 n.10 (Tex. Crim. App. 1994) ("As judges on this honorable Court, we are bound to apply the United States Constitution as interpreted by the Supreme Court; we do not have the luxury or the liberty to ignore binding precedent.").

forensic interviewer more than a year after the initial interview.[6]

I.

Three-year-old R.D. stayed with her great-grandmother for childcare. Appellant is R.D.'s great-uncle who, with his wife, moved into the great-grandmother's home in the spring of 2007. In August of that year, R.D. started acting "strange" and "walking around like a zombie." Her father asked her if anyone had touched her "cookie"–R.D.'s word for her vagina–and he named off various people that she had been around. When he named appellant, R.D. said, "Yes."[7] R.D.'s parents called the police.

A week later, R.D.'s family took her to The Bridge Advocacy Center, where a forensic interviewer videotaped an interview with R.D. Throughout most of the interview, R.D. was looking down at the pictures that she was vigorously coloring. She correctly answered some of the interviewer's questions concerning her body parts and the identification of animals and colors, but she answered others incorrectly. She seemed uninterested in many of the interviewer's questions and several times said that she wanted to go watch Spiderman on TV. When she couldn't leave, she folded her arms and, at first, would not cooperate.

Eventually, she said that her aunt saw appellant touch her "cookie" and that her grandmother saw him do it and "spanked" him for it. In fact, neither the aunt nor the

---

[6] *Coronado,* 310 S.W.3d. at 165.

[7] R.D.'s hearsay statement was admitted under Article 38.072, which provides for the admissibility of a child's initial "outcry" to an adult only when "the child . . . testifies or is available to testify at the proceeding in court or in any other manner provided by law." Tex. Code Crim. Proc. art. 38.072, § 2(b)(3).

grandmother had seen appellant touch the victim. R.D. was also examined by a sexual-assault nurse who found that her hymen was irregular and that this healed injury had been caused by penetration.

Before trial, the State filed a motion to request the trial court to find R.D.–now five years old–unavailable to testify and to admit the videotaped interview instead. R.D.'s therapist testified and said that she believed that testifying in front of the appellant or testifying via closed circuit television would be harmful.[8] She thought that submitting written interrogatories through a female interviewer was the "best option." Over the appellant's objection,[9] the trial court ruled that R.D. was unavailable to testify and that

---

[8] The therapist testified extensively to the trauma that R.D. had initially suffered, the progress that she had made during therapy, and to a relapse that R.D. had experienced as the trial date approached. The therapist thought that R.D. would suffer further trauma, not so much from the act of testifying, but from being made to recall the events, regardless of the setting. She stated:

> At this point, the abuse is almost–I mean she was three. I think that it can be nearly forgotten. I think it could be non–non–not impactful because she was so very young, but we're looking at her now at five.
> She's so much more socially aware. She's much more aware of privacy and modesty. And to–to relive this and, also, to try to put into words an experience that she had at three, I believe, is–is impossible and is very–is very damaging.

The therapist testified that any further questioning would be damaging because it would cause R.D. to remember the event, "something that needs to be put to rest."

[9] Appellant's counsel specifically objected to the use of written interrogatories, as well as the general procedures set out in Article 38.071, § 2:

> And I think Mr. Coronado just has a right–the issue I questioned one of the witnesses about is, with live testimony, things come up that you need to ask about, that you didn't anticipate. . . . With the written interrogatories I'll never have that opportunity. So we are certainly requesting at least the option to [have] live testimony with the closed-circuit setup.

After the trial judge ruled that he would require the Section 2 methodology, defense counsel

defense counsel could submit written interrogatories to the forensic interviewer, who would ask those questions and any "follow up" ones in a second recorded interview.

At this second interview–conducted fifteen months after the first one–the forensic interviewer began by discussing the difference between the truth and a lie, and R.D. appeared to understand the difference.  Nonetheless, she said more than once that truthful statements were lies.  During this interview, R.D. said that appellant put his finger in her "cookie" (as opposed to touching it as she had said fifteen months earlier).  This time she said that neither her aunt nor her grandmother saw any sexual contact between her and appellant.

R.D. did not testify at trial, but the two videotaped interviews were admitted over appellant's confrontation objection.  The jury convicted appellant of both touching R.D.'s genitals and penetrating her genitals and sentenced him to life in prison on both counts.

On appeal, appellant argued that the denial of rigorous cross-examination denied him

---

again stated, "Just for purposes of the record, though, the Defense is objecting to the Court's decision"– [Judge: "I understand"] "about testimony by interrogatories only."

After the trial judge ruled, he asked if counsel had his written questions ready.  He did.  The trial judge then asked defense counsel if he agreed that the forensic interviewer "would try to follow up on certain questions if it were appropriate."  Defense counsel did agree: "[S]he has my permission to adjust her questions as the situation may call for."  But at that point the prosecutor objected, saying that the interviewer might ask a "follow up" question that the defense did not want to be asked.  Defense counsel then stated that he would at least "like to go to The Bridge–the interview is at 2:00 p.m. today–and be in an adjacent room.  And in the event something did come up that I felt another question would be appropriate, I'd like to be there."  But the prosecutor said that only law-enforcement personnel are allowed in the adjacent room unless a court files a written order allowing that.  The trial judge intervened and told the attorneys that either the interviewer could ask follow-up questions or defense counsel would be permitted to be there.  The prosecutor agreed that the interviewer could ask follow-up questions and defense counsel stated that he didn't have a problem with the interviewer "using her professional judgement in questioning a five-year-old child.  She's better at it than I am, I'm sure."

his right to confront the witness. The court of appeals agreed that R.D.'s out-of-court statements were testimonial, but concluded that the trial court did not err in allowing "cross-examination through written questions only."[10]

II.

**A.    Pre-*Crawford* Law on the Right to Confrontation.**

The Confrontation Clause gives a criminal defendant the right "to be confronted with the witnesses against him."[11] In *Coy v. Iowa*,[12] Justice Scalia explained that "[w]e have never doubted, therefore, that the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact."[13] In *Maryland v. Craig*,[14] decided just two years later, the Supreme Court pulled back from that absolute position. It held that in *some* special cases, when the specific facts showed that there was a "compelling" state interest, the witness need not actually confront the defendant face-to-face as she testified, although the defendant must be able to see her as she testified and must be able to contemporaneously cross-examine her.[15]

Both *Coy* and *Craig* involved prosecutions for sexually assaulting a child. Coy was

---

[10] *Coronado*, 310 S.W.3d at 165.

[11] U.S. CONST., amend. VI.

[12] 487 U.S. 1012 (1988).

[13] *Id.* at 1016.

[14] 497 U.S. 836 (1990).

[15] *Id.* at 851-52.

accused of molesting two thirteen-year-old girls who were having an outdoor sleepover in a neighboring yard.[16]  An Iowa statute allowed prosecutors to use a screen to shield child witnesses from seeing the defendant as they testified.[17]  Most of the elements of the right of confrontation were preserved through this procedure, but the witnesses could not see the defendant and the defendant could not see the witnesses as they testified.[18]  And, perhaps most importantly, the jury could not see how the witnesses and the defendant interacted when each confronted the other.[19]  In a 6-2 decision, the Supreme Court held that this procedure violated the right to confrontation.[20]  Justice Scalia noted the compelling state interest of protecting fragile children and other witnesses:

> That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs.[21]

In *Craig*, however, the Supreme Court, in a 5-4 decision, upheld the use of a one-way closed-circuit television for questioning a six-year-old child in lieu of face-to-face

---

[16] *Coy*, 487 U.S. at 1014.

[17] *Id*. (citing IOWA CODE § 910A.14 (1987)).

[18] *Id.* at 1014-15.

[19] *Id.* at 1019-20.

[20] *Id.* at 1021-22.  The case was remanded to the Iowa Supreme Court to assess whether the error was harmful.  It was harmful, and the defendant was entitled to a new trial. *State v. Coy*, 433 N.W.2d 714, 715 (Iowa 1988).

[21] *Coy*, 487 U.S. at 1020.

confrontation in the courtroom itself.[22]  A Maryland statute authorized this procedure if the trial judge determined that "testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate."[23]  Under this procedure, the defendant could see the child as she testified, but she could not see the defendant.

According to Justice O'Connor, this procedure did not violate the Confrontation Clause because that provision can be reduced to its "central concern," which is "to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."[24]  Rigorous and contemporaneous cross-examination could, under some special circumstances, alleviate the need for face-to-face confrontation.  The Court stressed that only the witness's ability to confront the defendant face-to-face was affected–no other portion of the Sixth Amendment right of confrontation was compromised:

> [The one-way closed-circuit television procedure] "(1) insures that the witness will give his statements under oath–thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; [and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness

---

[22] *Craig*, 497 U.S. at 840.  The female defendant was charged with sexually molesting the little girl who attended a kindergarten that the defendant owned and operated.  *Id.* at 840-41.

[23] *Id.* at 841 (quoting MD. CTS. & JUD. PROC. CODE ANN. § 9-102(a)(1)(ii) (1989)).

[24] *Id.* at 845.

in making his statement, thus aiding the jury in assessing his credibility."[25]

Thus, the "combined effect of these elements of confrontation–physical presence, oath, cross-examination, and observation of demeanor by the trier of fact–serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal proceedings."[26]

Justice Scalia, the author of *Coy* just two years earlier, wrote a scathing dissent that began, "Seldom has this Court failed so conspicuously to sustain a categorical guarantee of the Constitution against the tide of prevailing current opinion."[27]  He stated,

> The Sixth Amendment provides, with unmistakable clarity, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The purpose of enshrining this protection in the Constitution was to assure that none of the many policy interests from time

---

[25] *Id.* at 845-46, 851 (quoting *California v. Green*, 399 U.S. 149, 158 (1970)).

[26] *Id.* at 846.  The provisions of Article 38.071, § 3, presenting a child's testimony via closed-circuit television, are similar to those discussed in *Craig*.  That methodology was upheld by this Court in *Gonzales v. State*, 818 S.W.2d 756 (Tex. Crim. App. 1991), in which we held that the use of a two-way closed-circuit television system to obtain the testimony of a child witness did not violate the defendant's confrontation rights under *Craig*.  In that case, the trial judge had determined that use of such a system was necessary to protect the child's well-being and that she would suffer severe trauma if forced to testify in the courtroom.  *Id*. at 759-60.  The system provided a live, two-way presentation of the child's testimony and allowed for rigorous, contemporaneous cross-examination, as well as any necessary objections to the questions or answers given.  *Id.* at 764.  The witness and defendant could view one another and could be observed by the judge and jury.  The witness was merely in another room.  *Id.  See also Marx v. State*, 987 S.W.2d 577, 582-83 (Tex. Crim. App. 1999) (upholding use of the methodology set out in art. 38.071, § 3, over a Confrontation Clause objection, even when one child was over the age of twelve and the other child was not the victim of the offense).

[27] 497 U.S. at 860 (Scalia, J., dissenting).

to time pursued by statutory law could overcome a defendant's right to face his or her accusers in court.[28]

This language, that even compelling social policies may not override the Sixth Amendment right of confrontation, echoed Justice Scalia's language in *Coy*. The Supreme Court has never overturned the holding in *Craig*, but, beginning with *Crawford v. Washington*,[29] the Supreme Court has nibbled it into Swiss cheese by repeating the categorical nature of the right to confrontation in every one of its more recent cases.[30]

---

[28] *Id.* at 860-61 (Scalia, J., dissenting).

[29] 541 U.S. 36 (2004).

[30] Academics have noted the enormous impact that the *Crawford* line of cases has had upon both domestic-violence and child-abuse cases. Such prosecutions have become much more difficult because the victim must almost always testify at trial to satisfy the Confrontation Clause. *See, e.g.,* David M. Wagner, *The End of the "Virtually Constitutional"? The Confrontation Right and* Crawford v. Washington *as a Prelude to Reversal of* Maryland v. Craig, 19 REGENT U.L. REV. 469, 469 (2006) (noting that–after *Crawford*–a "forthright holding that the government may deny a criminal defendant a confrontation with his accuser because a 'compelling state interest' is present, in, say, combating child abuse, would invite obvious and well-founded objections of the 'slippery slope' variety" in arguing that the Supreme Court will overturn its prior decision in *Craig* based upon the constitutional analysis of *Crawford*); Myrna S. Raeder, *Comments on Child Abuse Litigation in a "Testimonial" World: The Intersection of Competency, Hearsay, and Confrontation,* 82 IND. L.J. 1009, 1023 (2007) (discussing the use of forensic interviews in child-abuse cases; stating that "*Crawford* appears to doom the use of multidisciplinary teams in child abuse as a way of introducing statements of children who do not testify" and lamenting that "*Crawford* has turned these best practices into a textbook for creating testimonial statements when the child does not testify."); Kimberly Y. Chin, *"Minute and Separate": Considering the Admissibility of Videotaped Forensic Interviews in Child Sexual Abuse Cases After* Crawford *and* Davis, 30 B.C. THIRD WORLD L.J. 67 (2010) (noting that, under *Crawford*, child-abuse forensic videotapes are generally inadmissible when the child is unavailable to testify at trial, and suggesting that some videotapes could be redacted to eliminate all testimonial statements); Prudence Beidler Carr, Comment: *Playing By All the Rules: How to Define and Provide a "Prior Opportunity for Cross-Examination" in Child Sexual Abuses Cases After* Crawford v. Washington*,* 97 J. CRIM. L. & CRIMINOLOGY 631 (2007) (noting the enormous impact that the *Crawford* decision has had upon child-sexual-abuse cases, but arguing that pretrial videotapes may still be admissible under both *Crawford* and *Craig* if the defendant is

**B.    The Right to Confrontation under *Crawford*.**

Fourteen years after *Craig*, in *Crawford v. Washington*, the Supreme Court reiterated the categorical right of confrontation that it had set out in *Coy*. Justice Scalia, speaking for seven members of the Court,[31] concluded that, "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."[32] The Court overruled its prior decision in *Roberts v. Ohio*,[33] which allowed admission of "*ex parte* testimony upon a mere finding of reliability," because that "malleable standard" failed to protect against "paradigmatic confrontation violations."[34]

---

given an appropriate opportunity for prior confrontation and cross-examination). *Cf. State v. Stock*, 256 P.3d 899, 905 (Mont. 2011) (defendant's confrontation rights under *Crawford* were not violated when six-year-old child testified via two-way closed-circuit television); *People v. Buie*, 775 N.W.2d 817, 825-27 (Mich. Ct. App. 2009) (applying *Craig* to the issue of whether expert testimony given via two-way interactive technology violated the defendant's confrontation rights); *State v. Henriod,* 131 P.3d 232 (Utah 2006) (rejecting the argument that *Crawford* implicitly abrogated *Craig*); *State v. Blanchette*, 134 P.3d 19, 29 (Kan. Ct. App. 2006) (same).

[31] Chief Justice Rehnquist wrote a concurring opinion, in which Justice O'Connor, the author of *Craig*, joined. Chief Justice Rehnquist found the "testimonial" vs. "nontestimonial" distinction historically unfounded and stated that he was "not convinced that the Confrontation Clause categorically requires the exclusion of testimonial statements" that had not been previously tested by the opportunity for cross-examination. *Crawford*, 541 U.S. at 69-72 (Rehnquist, C.J., concurring).

[32] *Crawford*, 541 U.S. at 68-69. Justice Scalia, now speaking for the majority in *Crawford*, echoed his dissent in *Craig*: "[T]he Confrontation Clause does not guarantee reliable evidence; it guarantees specific trial procedures that were thought to *assure* reliable evidence, undeniably among which was 'face-to-face' confrontation." *Craig*, 497 U.S. at 862 (Scalia, J., dissenting).

[33] 448 U.S. 56 (1980).

[34] *Crawford*, 541 U.S. at 60.

In examining the history of the Confrontation Clause, the *Crawford* Court explained that it was based on the English common-law tradition of "live testimony in court subject to adversarial testing."[35]  This English system was in contrast to the European civil-law system that "condone[d] examination in private by judicial officers."[36]  That is, the European inquisitorial system allows for *ex parte* questioning, the use of written questions and answers, and *ex parte* depositions.  Justice Scalia noted that even the earliest American decisions held that depositions or other prior testimony could be admitted against an accused only if he was present and had an opportunity to cross-examine the witness at the time the live testimony was given.[37] That "prior opportunity to cross-examine" in person is both a "necessary" and "dispositive" requirement for the admission of testimonial statements under the Confrontation Clause.[38]  Justice Scalia warned that "under no circumstances" shall the defendant be deprived of "'seeing the witness face to face, and . . . subjecting him to the ordeal of cross-examination.'"[39]

In *Crawford*, the Court explained that "[t]he text of the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by

---

[35] *Id.* at 43.

[36] *Id.*

[37] *Id.* at 49.

[38] *Id.* at 55.

[39] *Id.* at 57 (quoting *Mattox v. United States*, 156 U.S. 237, 244 (1895)).

the courts."[40] Social policy, public policy, even grave practical difficulties of obtaining the witness for trial[41] do not trump the categorical requirement.  Rather, under *Crawford*,

> Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.[42]

The *Crawford* Court stated, "It is not enough to point out that most of the usual safeguards of the adversary process attend the statement, when the single safeguard missing is the one the Confrontation Clause demands."[43]  Thus, when testimonial statements are at issue, and the declarant is not making those statements from the witness stand at trial, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."[44]

That prior opportunity for cross-examination must serve the same function as is

---

[40] *Id*. at 54.

[41] *See Bullcoming v. New Mexico*, 131 S.Ct. 2705, 2713, 2717-18 (2011) (holding that *Crawford* requires the lab technician who actually ran the lab tests to appear and submit to adversarial cross-examination in lieu of a more easily available surrogate witness; rejecting suggestion that an "unbending application of the Confrontation Clause" would impose an undue burden on the prosecution and concluding that the constitutional requirement "'may not [be] disregard[ed] . . . at our convenience'") (quoting *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527, 2540 (2009)).

[42] *Crawford*, 541 U.S. at 61.

[43] *Id.* at 65.

[44] *Id.* at 68.

normally accorded to adversarial cross-examination in the courtroom during trial:

> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit, the witness. . . . [T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.[45]

## C.    Testimonial Statements under *Crawford* and its Progeny.

The question then became, "What out-of-court statements are 'testimonial' for purposes of the right of confrontation?"  In *Crawford*, the Court did not fully resolve that issue, recognizing that there would be some "interim uncertainty" interpreting and applying the distinction between testimonial and nontestimonial statements.[46]  Two years later, in *Davis v. Washington*,[47] the Supreme Court elaborated on that distinction:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.[48]

---

[45] *Davis v. Alaska*, 415 U.S. 308, 316 (1974).

[46] *Crawford,* 541 U.S. at 68 n.10.

[47] 547 U.S. 813 (2006).

[48] *Id.* at 822.

Under *Davis,* (as well as the Supreme Court's more recent confrontation decision,

*Michigan v. Bryant*[49]) the primary focus in determining whether an out-of-court statement

is "testimonial" is on the objective purpose of the interview or interrogation, not on the

declarant's expectations.[50]  If the objective purpose of the interview is to question a person

about past events and that person's statements about those past events would likely be

relevant to a future criminal proceeding, then they are testimonial.[51]

**D.**     **Child-Abuse Forensic Interview Statements and Videotapes Are Testimonial and Are Inadmissible Unless the Child Testifies or the Defendant Had a Prior Opportunity to Cross-Examine the Child.**

Virtually all courts that have reviewed the admissibility of forensic child-interview

statements or videotapes after the *Davis* decision have found them to be "testimonial" and

---

[49] 131 S.Ct. 1143 (2011).

[50] *Davis*, 547 U.S. at 822.  In *Bryant*, the Supreme Court stressed that courts, in determining the "primary purpose" of the interrogation or interview, must view the circumstances from an objective point of view:

> An objective analysis of the circumstances of an encounter and the statements and actions of the parties to it provides the most accurate assessment of the "primary purpose of the interrogation." The circumstances in which an encounter occurs— *e.g.,* at or near the scene of the crime versus at a police station, during an ongoing emergency or afterwards—are clearly matters of objective fact. The statements and actions of the parties must also be objectively evaluated. That is, the relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred.

131 S.Ct. at 1156.

[51] *Davis*, 547 U.S. at 822; *see State v. Arnold*, 933 N.E.2d 775, 784 (Ohio 2010) (child-rape victim's videotaped statements to interviewers at child-advocacy center that served primarily a forensic or investigative purpose were testimonial, and their admission at trial violated defendant's confrontation rights when child did not testify at trial).

inadmissible unless the child testifies at trial or the defendant had a prior opportunity for cross-examination.[52]  Indeed, in this case, the State does not dispute that R.D.'s statements, made during her two interviews at The Bridge Children's Advocacy Center, were testimonial, and the court of appeals explicitly held that they were testimonial.[53]

---

[52] *See, e.g.*, *Bobadilla v. Carlson*, 575 F.3d 785, 791-93 (8th Cir. 2009) (holding, on defendant's federal writ of habeas corpus, that state supreme court made an "unreasonable application of federal law" under *Crawford* in concluding that child's videotaped statement to social worker in sex-abuse case was admissible when child did not testify at trial and defendant had no opportunity to cross-examine child; affirming district court's ruling granting habeas relief); *State v. Contreras*, 979 So.2d 896, 905-12 (Fla. 2008) (harmful error to admit child-victim's videotaped statement to child-abuse coordinator when child was declared unavailable for trial and defense counsel's discovery deposition of child did not afford defendant sufficient opportunity for cross-examination); *State v. Hooper*, 176 P.3d 911, 917-18 (Idaho 2007) (holding that videotaped statements the child victim made to nurse during interview at a sexual-trauma abuse-response center were testimonial because the circumstances surrounding the interview indicated that the primary purpose of the interview was to establish past events potentially relevant to later criminal prosecution as opposed to meeting the child's medical needs; reversible error to admit them when child did not testify at trial and defendant had no prior opportunity for cross-examination); *State v. Henderson*, 160 P.3d 776, 785-93 (Kan. 2007) (reversible error to admit three-year-old child's videotaped statement to social worker taken at government facility to gather evidence against alleged perpetrator when child did not testify at trial and defendant did not have prior opportunity to cross-examine); *State v. Justus*, 205 S.W.3d 872, 880-81 (Mo. 2006) (while social worker's job was to protect child, "primary purpose" of videotaped statements was to establish past events; reversible error to admit four-year-old child's videotaped interview when defendant did not have opportunity to cross-examine her); *State v. Blue*, 717 N.W.2d 558, 564-67 (N.D. 2006) (videotaped statement to forensic interviewer at child advocacy center inadmissible because defendant did not have opportunity to cross-examine; irrelevant that trial judge found the child's statement reliable and trustworthy because Confrontation Clause requires cross-examination); *State v. Pitt*, 147 P.3d 940, 943-46 (Or. Ct. App. 2006) (reversible error to admit "testimonial" videotaped statements made by two children to social worker at child-abuse assessment center when children did not testify at trial); *In re S.R.*, 920 A.2d 1262, 1266-69 (Pa. Super. Ct. 2007) (reversible error to admit videotape of four-year-old child's statement to forensic DHS interviewer for the purpose of investigation and possible prosecution when child did not testify at juvenile's adjudication hearing).

[53] *Coronado*, 310 S.W.3d at 163.  The court explained:
Here, the primary purpose of the August 8th interview was to preserve a record of past facts or events for purposes of a later criminal prosecution and the purpose of

1.      *A prior opportunity to cross-examine means an opportunity for full personal adversarial cross-examination, including attacks on credibility.*

Therefore, the Confrontation Clause question in this case is whether appellant had "a prior opportunity to cross-examine" R.D., as is required under *Crawford*. The court of appeals quite appropriately cited *Davis v. Alaska*[54] for the proposition that the right of confrontation includes "not only the right to face-to-face confrontation, but also the right to meaningful and effective cross-examination."[55] And the court aptly cited Dean Wigmore, who had explained that the "'main and essential purpose'" of confrontation is "the opportunity for cross-examination through the process of putting direct and personal questions to the witnesses and the obtaining of immediate answers."[56]

Indeed, it is that personal presence of the defendant and the right to ask probing, adversarial cross-examination questions that lies at the core of an American criminal trial's truth-seeking function. As the Supreme Court stated in *California v. Green*,[57] a 1970 Confrontation Clause case, the right of confrontation forces the witness to submit to cross-

---

the follow up interview was to comply with the requirements of article 38.071 for the admissibility of that original recording during that prosecution. The accuracy and truthfulness of R.D.'s statements were crucial to the State's case against Appellant. In both situations, R.D.'s statements clearly constitute testimonial hearsay for Confrontation Clause purposes.

*Id.*

[54] 415 U.S. 308 (1974).

[55] *Coronado*, 310 S.W.3d at 162.

[56] *Id.* (citing 5 JOHN WIGMORE, EVIDENCE § 1395, at 123 (3d ed. 1940)).

[57] 399 U.S. 149 (1970).

examination, the "'greatest legal engine ever invented for the discovery of truth.'"[58]

Over one hundred years ago, Dean Wigmore waxed eloquent over the special sanctity of cross-examination in the American system of justice: "[C]ross-examination, not trial by jury, is the great and permanent contribution of the Anglo-American system of law to improved methods of trial procedure."[59]   And that right of personal and open cross-examination had been well established in English common law.  According to Sir Matthew Hale in 1680, "by this course of personal and open examination, there is opportunity for all persons concerned, viz. the judge, or any of the jury, or parties, or their council or attornies, to propound occasional questions, which beats and boults out the truth much better than when the witness only delivers a formal series of his knowledge without being interrogated."[60] One important objective of cross-examination is to test the veracity of the witness, "[b]ut even when all suspicion of veracity is supposed to be out of the question, how very unsatisfactory is the '*ex parte*' account of a witness taken under circumstances in which the adverse party had not a fair opportunity of cross-examination."[61]

Cross-examination means

[t]he questioning of a witness upon a trial or hearing by the party opposed to the party who called the witness to testify.  The purpose of cross-examination

---

[58] *Id.* at 158 (quoting 5 JOHN WIGMORE, EVIDENCE § 1367 (3d ed. 1940)).

[59] 2 JOHN WIGMORE, WIGMORE ON EVIDENCE § 1367 at 1698 (1904).

[60] *Id.* (quoting SIR MATTHEW HALE, HISTORY OF THE COMMON LAW ch. 12 (1680)).

[61] *Id.* (quoting 2 W.D. EVANS, NOTES TO POTHIER, 198 (1806)).

is to discredit a witness before the factfinder in any of several ways, as by bringing out contradictions and improbabilities in earlier testimony, by suggesting doubts to the witness, and by trapping the witness into admissions that weaken the testimony.[62]

It is an examination by the opposing party, not a "neutral" interviewer. It occurs in the formal setting–a trial or a hearing.[63] First the witness testifies. Then, cross-examination follows upon its heels.[64] The cross-examiner may discredit the witness's direct testimony in several different ways, depending upon the witness, the questioner, and the specific situation as it unfolds in the hearing. Both the federal and Texas hearsay rules apply to prior out-of-court statements made by a testifying witness.[65] The rationale for this rule is that a deferred opportunity to cross-examine is thought to be distinctly inferior to contemporaneous cross-examination:

---

[62] BLACK'S LAW DICTIONARY 433 (9th ed. 2009).

[63] *See Mattox v. United States*, 156 U.S. 237, 244 (1895) (holding that it did not violate the Sixth Amendment right of confrontation when a deceased witness's prior testimony from an earlier trial was read in a second trial of the same matter because the defendant had the opportunity to conduct a full cross-examination in the first trial; "The substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination. This, the law says, he shall under no circumstances be deprived of[.]").

[64] WIGMORE, supra note 59, § 1369, at 1709; *see also Hughes v. State*, 385 So.2d 1010, 1014 (Ala. Crim. App. 1980).

[65] FED. R. EVID. 801(d)(1) advisory committee's note (noting that "[t]he position taken by the Advisory Committee in formulating this part of the rule is founded upon an unwillingness to countenance the general use of prior prepared statements as substantive evidence"); 1 ROY R. RAY, TEXAS PRACTICE: TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL § 785, at 12 (3d ed. 1980) (stating that "[t]he hearsay rule applies even to evidence of previous statements made by the witness himself.").

The chief merit of cross examination is not that at some future time it gives the party opponent the right to dissect adverse testimony. Its principal virtue is in its immediate application of the testing process. Its strokes fall while the iron is hot. False testimony is apt to harden and become unyielding to the blows of truth in proportion as the witness has opportunity for reconsideration and influence by the suggestions of others, whose interest may be, and often is, to maintain falsehood rather than truth.[66]

Many of the post-*Crawford* child-abuse videotape cases that have been reversed involved statutory or judicial procedures that allowed the admission of testimonial hearsay statements without any cross-examination or an insufficient opportunity for cross-examination.[67] For example, in *State v. Contreras*,[68] the Florida Supreme Court held that the state's statutory procedures regarding discovery depositions provided an inadequate opportunity for cross-examination because, *inter alia*, they may be taken without the

---

[66] *State v. Saporen*, 285 N.W. 898, 901 (Minn. 1939). Dean Wigmore, on the other hand, once advocated this position but "on further reflection rejected it when the witness appeared and personally testified at the trial":

> [T]he theory of the Hearsay rule is that an extrajudicial statement is rejected because it was made out of Court by an absent person not subject to cross-examination. . . . Here, however, by hypothesis the witness is present and subject to cross-examination. There is ample opportunity to test him as to the basis for his former statement. The whole purpose of the Hearsay rule has already been satisfied. Hence there is nothing to prevent the tribunal from giving such testimonial credit to the extrajudicial statement as it may seem to deserve.

2 JOHN WIGMORE, A TREATISE ON THE SYSTEM OF EVIDENCE IN TRIALS AT COMMON LAW § 1018 (2d ed. 1923). And that is the position of the Supreme Court concerning the Confrontation Clause: As long as the witness takes the stand at trial and is subject to in-court adversarial cross-examination, the Confrontation Clause is satisfied. *Crawford*, 541 U.S. at 59 ("Finally, we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.").

[67] See note 52 *supra.*

[68] 979 So.2d 896 (Fla. 2008).

defendant's personal presence. These depositions do "not function as the equivalent of the cross-examination opportunity envisioned by *Crawford*."[69] Indeed, even in Wigmore's day, depositions did not provide a sufficient opportunity for cross-examination unless they were taken in "a formal proceeding governed by a settled procedure and enforced by vested authority."[70] Informal interviews, whether transcribed or recorded, do not provide the appropriate solemnity to qualify as an opportunity for formal cross-examination.[71] And *ex parte* depositions are strictly inadmissible; "[t]his is universally conceded as a common-law principle."[72]

Similarly, in *People v. Fry*,[73] the Colorado Supreme Court held that testimony taken at a preliminary hearing–hearings that are usually restricted to an assessment of probable cause and limit the defendant's right of cross-examination on credibility issues–is not admissible at trial. The preliminary hearing does "not provide an adequate opportunity to cross-examine sufficient to satisfy the Confrontation Clause requirements."[74]

---

[69] *Id.* at 910.

[70] WIGMORE, *supra* note 59, § 1376, at 1715.

[71] *Id.*

[72] *Id.*, § 1377, at 1716.

[73] 92 P.3d 970 (Colo. 2004).

[74] *Id.* at 978. The Colorado Supreme Court explained,
This case exemplifies the dangers of admitting preliminary hearing testimony as evidence at trial when the witness is unavailable. [The deceased victim] made several statements incriminating Fry at the preliminary hearing. Although [the victim's] credibility was factually subject to attack, credibility determinations are not allowed at preliminary hearings. Thus, [the victim's] testimony could not be subjected to the procedural rigors required by the Confrontation Clause at the

*2.       Ex parte submission of written interrogatories does not qualify as cross-examination.*

The State argues that it "has an important public policy interest in protecting the physical and psychological well-being of children and, in particular, child abuse victims."[75] Therefore, argues the State, the trial court was "justified in requiring cross-examination by written interrogatories for the safety and protection of the child."[76] Although the State argues that there should be more flexibility in child-abuse cases, the Supreme Court has rejected the notion that there should be more flexibility concerning the Confrontation Clause in certain types of cases, such as domestic-abuse prosecutions. In *Davis*, Justice Scalia said:

> Respondents in both cases [*Davis* and *Hammon*], joined by a number of their *amici,* contend that the nature of the offenses charged in these two cases–domestic violence–requires greater flexibility in the use of testimonial evidence. This particular type of crime is notoriously susceptible to intimidation or coercion of the victim to ensure that she does not testify at trial. When this occurs, the Confrontation Clause gives the criminal a windfall. We may not, however, vitiate constitutional guarantees when they have the effect

---

preliminary hearing. Moreover, the trial court further allowed the testimony to skirt the procedural safeguards of the Confrontation Clause by allowing the testimony to be read aloud at trial, by a police officer, without the opportunity for immediate rebuttal. The testimony was therefore never subject to direct attack. The process employed in this case illustrates how dispensing with an adequate opportunity for cross-examination impedes a defendant from having a proper chance to rebut the evidence against him.

*Id.* at 979 (citation omitted). *Cf. State v. Mantz*, 222 P.3d 471, 478 (Idaho Ct. App. 2009) (holding that prior testimony from a preliminary hearing may be admissible under *Crawford* if it is "'given under circumstances closely approximating those that surround the typical trial'"; noting that "[c]ircumstances approximating trial include witness testimony under oath, representation by counsel, an opportunity to cross-examine the witness, and the proceedings conducted before a judicial tribunal capable of providing a judicial record of the proceedings.") (quoting *California v. Green*, 399 U.S. 149, 165 (1970)).

[75] State's Brief at 9.

[76] *Id.*

of allowing the guilty to go free.[77]

The content of the constitutional rights to confrontation and cross-examination do not depend upon the type of crime charged or the fragility of the witnesses; all accused citizens are entitled to the full protection of the constitution.

Furthermore, the *Crawford* decision made clear that direct and personal cross-examination, with counsel's ability to ask follow-up questions, is essential "to tease out the truth" at trial.[78] Thus, the *Crawford* Court stated that depositions or other prior testimony could be admitted against an accused only if he was present and had an opportunity to cross-examine *during* that deposition or prior testimony.[79] And, in ringing terms, the Supreme Court declared that, "'under no circumstances'" shall the defendant be deprived of "'seeing the witness face to face, and . . . subjecting him to the ordeal of a cross-examination.'"[80] In the context of battered women, small children, and other fragile witnesses, this is a heavy price to pay, but it is the price that our constitution and our Supreme Court requires. There is no "balancing" the defendant's constitutional right of confrontation and cross-examination against other social policies, even compelling ones.

III.

The court of appeals in this case, without citing to any of the *Crawford* line of cases,

---

[77] *Davis*, 547 U.S. at 832-33.

[78] *Crawford*, 541 U.S. at 67.

[79] *Id.* at 49.

[80] *Id.* at 57 (quoting *Mattox v. United States*, 156 U.S. 237, 244 (1895)).

concluded that written interrogatories, propounded by a forensic child-sexual-abuse examiner some fifteen months after the child's initial videotaped interview that the State wished to introduce, were a sufficient substitute for live, adversarial cross-examination to satisfy a defendant's right to confrontation.[81]   But we are "not free to conduct a cost-benefit analysis of clear and explicit constitutional guarantees, and then to adjust their meaning to comport with our findings."[82]   Cross-examination means personal, live, adversarial questioning in a formal setting.  It cannot have one meaning for some witnesses and another meaning for others.

We are unable to find any post-*Crawford* precedent from any jurisdiction that states, or even suggests, that a list of written interrogatories, posed by a forensic examiner to a child in an *ex parte* interview, is a constitutional substitute for live cross-examination and confrontation.[83]   Had he been forced to accept such a pallid substitute for the real thing, Sir

---

[81] *Coronado,* 310 S.W.3d at 164-65 ("In an attempt to find a suitable solution to this Hobson's choice, while at the same time providing a meaningful compromise between the defendant's right of confrontation and society's interest in protecting young child victims from additional trauma occasioned by placing them within the crucible of confrontation and cross-examination in a courtroom setting, we find that the procedures governed by section 2(b) of article 38.071 can be an appropriate constitutional accommodation.").

[82] *Maryland v. Craig*, 497 U.S. 836, 870 (1990) (Scalia, J., dissenting); *see also Giles v. California*, 554 U.S. 353, 375-76 (2008) ("[T]he guarantee of confrontation is no guarantee at all if it is subject to whatever exceptions courts from time to time consider 'fair.'  It is not the role of courts to extrapolate from the words of the Sixth Amendment to the values behind it, and then to enforce its guarantees only to the extent they serve (in the courts' views) those underlying values. The Sixth Amendment seeks fairness indeed–but seeks it through very specific means (one of which is confrontation) that were the trial rights of Englishmen. It 'does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts.'") (quoting *Crawford*, 541 U.S. at 54).

[83] There has been at least one post-*Crawford* case in which a *pro se* defendant's right to personally cross-examine a victim-witness has been curtailed by requiring stand-by co-counsel to

Walter Raleigh would once more rattle his chains and cry out from the Star Chamber, "[L]et Cobham be here, let him speak it. Call my accuser before my face[.]"[84] A few written interrogatories sent off to the Tower for the warden to ask Lord Cobham in his cell would not satisfy Sir Walter or the Confrontation Clause his trial engendered.

The *ex parte* "written interrogatory" procedure used in this case would not pass muster under *Craig*, the very case that the State and the court of appeals relied upon. In *Craig,* the majority held that the right of confrontation was not unconstitutionally gouged because *every other* aspect of the right to confrontation except face-to-face confrontation in the courtroom was given full force.[85] *Craig* did require that the child testify under oath, be subject to full

---

ask the defendant's cross-examination questions when it appeared likely that he would intimidate or terrorize the witness on the witness stand. At issue was the constitutional right of self-representation, not the right of confrontation. *See, e.g., Partin v. Commonwealth*, 168 S.W.3d 23, 27-29 (Ky. 2005) (noting that "[c]ross-examination can be used to attack the human components of the prosecution's case-in-chief through intimidation. In certain cases, the intimidation of the witness during cross-examination and the tactical advantage gained by it may exceed what the Constitution and fundamental fairness in the adversarial process require"; the trial court's decision to require standby counsel to actually pose the questions to the victims was not an abuse of discretion and did not violate defendant's right of self-representation). That is a very different situation from one in which the defendant's counsel cannot personally cross-examine the witness.

[84] *Crawford*, 541 U.S. at 44 (quoting *Raleigh's Case*, 2 How. St. Tr. 1, 15-16 (1603)).

[85] 497 U.S. at 851. Indeed, in *Romero v. State*, 173 S.W.3d 502, 505 (Tex. Crim. App. 2005), a case in which we held that the defendant's confrontation rights were violated, the witness wore a disguise while he was testifying live in the courtroom. In that case, two confrontation rights were gouged: face-to-face confrontation plus an inability to fully assess the witness's demeanor because of his baseball cap, dark glasses, and turned-up collar. We concluded that this procedure did not comport with *Craig*'s mandate that, even if face-to-face confrontation is denied, the reliability of the testimony is otherwise assured. We explained the importance of the remaining confrontation rights that were not gouged in *Craig*:

> Whether the reliability of the testimony is otherwise assured turns upon the extent to which the proceedings respect the four elements of confrontation: physical presence, oath, cross-examination, and observation of demeanor by the trier of fact. In *Maryland v. Craig*, the Supreme Court found sufficient assurance of

contemporaneous cross-examination, and be observed by the judge, jury, and defendant during that testimony.[86]  The *only* reason that the closed-circuit television procedure was permitted in *Craig* was because "the Confrontation Clause does not prohibit use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation."[87]

There was no "rigorous adversarial testing" of R.D.'s testimonial statements by that greatest legal engine for uncovering the truth: contemporaneous cross-examination.  The written-interrogatories procedure used in this case does not pass muster under our English common-law adversarial system or our United States Constitution.  The constitutional requirement of confrontation and cross-examination "may not [be] disregard[ed] . . . at our

---

reliability in a procedure that denied one of these elements—physical presence—where the remaining three elements were unimpaired.  In that case, a child witness testified in front of a one-way closed-circuit monitor that prevented her from seeing the defendant but permitted the judge, jury, and defendant to see the witness.  Because the witness was under oath, subject to contemporaneous cross-examination, and her demeanor was on display before the trier of fact, the Supreme Court found that the procedure adequately ensured that the testimony was "both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in person testimony."

*Id.* at 505.  It seems perverse to conclude that live, in-court testimony that is subject to full adversarial cross-examination violates the constitution if the witness's face is covered up, but a videotaped interview in which the defendant has had no cross-examination, no right to confront the witness face-to-face, no ability to see or have the jury see her facial demeanor as she talked to the forensic interviewer as she colored on her paper passes constitutional muster.  These two contradictory results cannot coexist.

[86] *Craig*, 497 U.S. at 857.

[87] *Id.*

convenience," regardless of the prediction of dire consequences.[88]

We therefore reverse the judgment of the court of appeals and remand this case to that court for further proceedings consistent with this opinion.

Delivered:  September 14, 2011
Publish

---

[88] *Melendez-Diaz, v. Massachusetts*, 129 S.Ct. 2527, 2540-41 (2009).  Indeed, in its most recent *Crawford* case, the Supreme Court reiterated its categorical requirement:  "As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity *to confront* that witness."  *Bullcoming, v. New Mexico*, 131 S.Ct. 2705, 2713 (2011) (emphasis added).